BROWN & SHARPE MFG. CO. v. COATES CLIPPER MFG. CO.

(Circuit Court of Appeals, First Circuit.  November 13, 1912.)

No. 989.

PATENTS (§ 328*)—INFRINGEMENT—HAIR CLIPPER.

The Carleton patent, No. 481,254, for a hair clipper having a push spiral spring in the frame to hold the two levers in closed position, in view of the prior art, must be reasonably limited to the mechanism described. As so limited, *held* not infringed by a device having different mechanism and on which a pull spiral spring is used.

Appeal from the District Court of the United States for the District of Massachusetts; Le Baron B. Colt, Judge.

Suit in equity by the Brown & Sharpe Manufacturing Company against the Coates Clipper Manufacturing Company. Decree for defendant, and complainant appeals.  Affirmed.

For opinion below, see 195 Fed. 84.

Wilmarth H. Thurston, of Providence, R. I., for appellant.

George P. Dike, of Boston, Mass. (William A. Macleod, of Boston, Mass., Cameron Macleod, and Macleod, Calver, Copeland & Dike, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge.  The contention of the parties in this case relates to the hair clipper art, and to that class of clippers used by barbers; and the rights of the complainant below, who is the appellant here, reside in a patent to Cyrus Carleton, dated August 23, 1892, which covered an invention for an improved hair clipper, and of that class in which a spiral spring is combined with a handle or lever for operating a reciprocating cutter.

Prior to this invention the spring commonly employed was a torsion spring, which had its limitations and defects in practical use. The difference between the principle of the torsion and the spiral spring is manifest, or at least well understood, and therefore need not be dwelt upon.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Carleton invention, upon which the complainant relies, resides in the fact that he conceived and developed the idea of displacing the torsion spring by a spiral spring, and of assembling mechanical means for its practical and beneficial use.

The claims of the Carleton patent and the advantages of the spiral spring over the torsion are sufficiently presented by the opinion of the court below, which is reported in (D. C.) 195 Fed. 84.

In the spiral spring art there is the well-known push spiral spring and the well-known pull spiral spring. The principle of the force involved in the two is doubtless the same. When the force which compresses the push spiral spring is released, the spring through its own action is extended, and its normal condition is recovered, while in the other class, that of the pull spring, when the power, which opens the coil and extends the spring, is released, the spring through its own force and under recoil returns to its normal condition under the same principle. It is needless to observe that the spiral spring is old, and has for a long time been in practical use in various situations.

The principle of the two being the same, or substantially the same, it would result unquestionably, under familiar authorities, that the rule of equivalency would apply to the pull spring of the defendant, if it should be determined that the Carleton invention embodies a sufficient degree or measure of originality and merit to justify a broad construction of the Carleton claims. The argument of the complainant in respect to the question of equivalents being accepted, it seems unnecessary to enter upon a discussion of the authorities having reference to that question; and we need only concern ourselves with the question of the originality and merit of the Carleton invention.

If Mr. Carleton had been the first to originate the idea of using the spiral spring, or, to be more exact, the push spiral spring, in connection with the art in question, the case would be quite different from the one presented. He was not the first with the idea, nor was he the first in the attempt to install it. Others had used it. His problem was to locate it in a more favorable part of the hair-clipping instrument, and to devise and describe mechanical means for its more practical use. A careful reading of the claims, as explained by the specification, clearly establishes that he did not have in his mind at all any spiral spring except the push spring, to which he so carefully and persistently adhered through all the expressions of the specification. His idea was to locate the push spring within the frame, close to the axis of the movable operating lever, and to guide, guard, and protect it in its work of practical use. Indeed, his language in the specification excludes the idea of broadening the claims so as to include another class of spiral springs, and likewise excludes the idea that he originated the scheme of using push springs, because he points out that spiral push springs had been used in some cases, and then proceeds to criticise the location upon the lever and to point out the defects and inconveniences resulting from the mechanical arrangement incident to the earlier push spiral spring, and then, while emphasizing the advantages of the push spiral spring, he proceeds to describe with particularity the manner in which he overcomes the objections to the earlier constructions.

As has been observed, it is impossible to reach the conclusion that Carleton had pull spiral springs in his mind at all. As a general proposition it is doubtless quite true that a sufficient measure of originality and merit would justify broadening claims, so as to cover an equivalent instrumentality not in the mind of the inventor at the time his claims and specification were formulated; but, while we do not disagree with the court below as to the validity of the Carleton invention in question, we think it is not one which would justify a construction of such scope. On the contrary, we think it is one of that class where the claims should be reasonably limited to the mechanical adaptations described.

It remains to be remarked that what the defendant describes in the record as clipper No. 2 embodies both the push and the pull principle, because the defendant employs what is called a thrust pin, one end of which being located in a recess in the side of the lever handle, and the other end being attached to the end of the spring farthest from the handle, pushes, instead of pulls, and thus extends the spring under hand pressure upon the lever handle; but, after all, it is the force of the recoil or pulling strain of the extended spring upon the outer end of the pin which operates to aid in the performance of the reciprocating work of the cutter blades, and it would thus seem that the train of mechanism is essentially different from that described by Carleton and covered by his patent under the interpretation which we accord to it.

Upon the foregoing view of noninfringement, it becomes immaterial to consider the question of laches.

It results that:

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.